# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**ANTHONY LAWSON,**

      **Plaintiff,**

**v.**                                  **Case No: 6:22-cv-1375-RBD-EJK**

**VISIONWORKS OF AMERICA, INC.,**

      **Defendant.**

## REPORT AND RECOMMENDATION

This cause comes before the Court on Defendant Visionworks of America, Inc.'s Renewed Motion to Dismiss (the "Motion to Dismiss"), filed September 26, 2022. (Doc. 18.) Plaintiff Anthony Lawson has responded in opposition. (Doc. 34.) The Motion has been referred to the undersigned for the issuance of a Report & Recommendation. Upon consideration, I respectfully recommend that the Motion be granted for lack of subject matter jurisdiction.

I.   BACKGROUND[1]

In 2020, Defendant, a nationwide optical retail store, sent Plaintiff "multiple"[2] telemarketing text messages to his cellular telephone number over the course of several months, and the three at issue are included in the Complaint:



(Doc. 1 ¶¶ 3, 18.) Plaintiff attempted to opt-out from receiving future communications by replying "STOP again," but this was ultimately ineffective. (*Id.* ¶¶ 19, 20.) Plaintiff alleges that receipt of these text messages caused Plaintiff harm, stating that he "wasted approximately two minutes reviewing all of Defendant's unwanted messages and

---

[1] The facts are derived from the Complaint (Doc. 1), the allegations of which the Court must accept as true in ruling on the Motion to Dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[2] Plaintiff recognizes in his response brief that a total of three text messages were sent by Defendant to Plaintiff. (Doc. 34 at 3.)

responding in an attempt to stop such messages." (*Id.* ¶ 34.) Additionally, Plaintiff was harmed in the form of "invasion of privacy, aggravation, and intrusion on seclusion." (*Id.* ¶ 33.)

Plaintiff initiated this putative class action against Defendant, alleging two counts of violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, and the regulations promulgated thereunder, 47 C.F.R. § 64.1200. (Doc. 1.) Specifically, Plaintiff claims that Defendant violated the TCPA because: (1) Defendant placed calls to him, as a consumer who had placed his phone number on the national Do-Not-Call Registry, in violation of 47 C.F.R. § 64.1200(c) (Count I); and (2) Defendant failed to maintain an internal do-not-call list for individuals who request that the caller stop placing calls to their telephone number, in violation of 47 C.F.R. § 64.1200(d) (Count II). Defendant now moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), arguing that: (1) Plaintiff lacks Article III standing because he has not established a concrete, cognizable injury, (2) Plaintiff is judicially estopped from bringing this claim, and (3) the Complaint fails to state a cause of action under the TCPA. (Doc. 18.)

## II.   THE TCPA

The TCPA prohibits the use of automatic telephone dialing systems to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). A text message to a cell phone qualifies as a "call" under the TCPA. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153,

156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA]"); *Salcedo v. Hanna*, 936 F.3d 1162, 1166 (11th Cir. 2019) ("[T]he FCC has applied the [TCPA's] regulations of voice calls to text messages.").

### III. ARTICLE III STANDING

#### A. Legal Standard

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (internal quotation marks and citation omitted). "[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack, as in this case, necessitates accepting the allegations in the complaint as true and assessing whether plaintiff has sufficiently alleged a basis for subject matter jurisdiction. *Id.* Factual attacks, on the other hand, allow the court to go beyond the pleadings and consider testimony and affidavits to determine whether subject matter jurisdiction exists "irrespective of the pleadings." *Id.*

### B. Analysis

To establish standing, a plaintiff must plausibly allege: (1) injury in fact; (2) causation; and (3) redressability. *Walters v. Fast AC, LLC*, No. 21-13879, 2023 WL 1771643, at *3 (11th Cir. Feb. 6, 2023). Defendant challenges the first element, arguing that Plaintiff failed to demonstrate a concrete harm under Supreme Court and Eleventh Circuit precedent.

To satisfy the injury in fact requirement, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted). "An injury in fact must also be 'concrete.'" *Id.*

On the matter of concreteness, the Supreme Court has confirmed that "intangible injuries can nevertheless be concrete." *Id.* at 340. To that end, the Supreme Court has instructed that "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* The Eleventh Circuit examined these factors in *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019). Specifically, the Eleventh Circuit considered whether a single, unsolicited text message promoting discounted legal services, where Plaintiff claimed wasted time as injury, constituted an injury in fact under the TCPA. *Id.* at 1172–73. The Eleventh

Circuit stated that when the concreteness of an injury is "difficult to recognize"— whether tangible or intangible— the judgment of Congress in drafting the TCPA and history must be examined; in so doing, the court concluded that wasted time resulting from a single, unwanted text message was not enough to establish a concrete injury for Article III standing purposes. *Id.* at 1168–73.

First, as to the judgment of Congress, the Eleventh Circuit noted that Congress has not addressed harm caused by telemarketing via text message in the TCPA. *Id.* at 1168–69. However, despite Congress's silence on this issue, the *Salcedo* Court noted that "Congress's legislative findings about telemarketing suggest that the receipt of a single text message is qualitatively different from the kinds of things Congress was concerned about when it enacted the TCPA." *Id.* at 1169. For example, "the TCPA show[s] a concern for privacy within the sanctity of the home that do[es] not necessarily apply to text messaging." *Id.* Thus, the judgment of Congress "provide[d] little support for finding that [the plaintiff's] allegations state a concrete injury in fact," particularly where he had not alleged an intrusion into the privacy of his home. *Id.* at 1170.

As to history, the Eleventh Circuit considered whether the plaintiff had alleged harm that bore a close relationship with harm regarded as providing a traditional basis for a lawsuit in English or American courts. *Id.* at 1170–71. First, the court looked at the tort of intrusion upon seclusion, "which creates liability for invasions of privacy that would be 'highly offensive to a reasonable person.'" *Id.* at 1171 (quoting Restatement (Second) of Torts § 652B). However, the plaintiff's harm fell far short of

that standard as "[s]imply sending one text message to a private cell phone is not closely related to the severe kinds of actively intermeddling intrusions that the traditional tort contemplates." *Id.*

The court also disregarded the traditional torts of trespass and nuisance, finding them to differ both in kind and degree to the harm alleged by the plaintiff, as the text messaging did not infringe on plaintiff's real property rights in any direct or indirect way. *Id.* Finally, the court looked at the torts of conversion and trespass to chattel, finding that, while plaintiff's allegations bore the most resemblance to these kinds of torts, plaintiff's allegations did not rise to the level of "complete and permanent dominion over his phone" and was more of the kind of "fleeting infraction upon personal property that tort law has resisted addressing." *Id.* at 1171–72.

Finding that neither the judgment of Congress nor history indicated a finding of concrete injury, the court concluded:

> Salcedo's allegations of a brief, inconsequential annoyance are categorically distinct from those kinds of real but intangible harms. The chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face. Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts.

*Id.* at 1172. To be sure, while there was no specific amount of wasted time alleged in *Salcedo*, the *Salcedo* Court concluded that "at the very least, more than a few seconds" of wasted time was required. *Id.* at 1173. In so finding, however, the Salcedo Court emphasized that the assessment of harm must be "qualitative, not quantitative" in nature. *Id.*

Defendant asserts that this Court should extend the Eleventh Circuit's holding in *Salcedo* to conclude that Plaintiff's allegations do not plausibly allege an injury in fact. (Doc. 18 at 10–11.) Defendant, in its Motion, cites to a litany of district court cases within the Eleventh Circuit that have extended *Salcedo*'s holding to cases Defendant asserts are similar to the case at bar. For example, in *Eldridge v. Pet Supermarket, Inc.*, 446 F. Supp. 3d 1063, 1068–69 (S.D. Fla. 2020), the plaintiff received five telemarketing text messages on five different occasions over a period of four months. Applying the reasoning in *Salcedo*, the court found that the plaintiff's allegations of wasted time did not establish a concrete injury in fact. *Id.* at 1070. "[T]he [c]omplaint suggest[ed] that [p]laintiff spent no longer than seconds each time he opened and read the texts; each text consist[ed] of only a few lines and contain[ed] less than 30 words." *Id.* at 1071. In reaching this finding, the court stated that "as in *Salcedo*, the time [p]laintiff spent reading the texts—individually or in the aggregate—[was] appreciably less than the time the Eleventh Circuit . . . found sufficient to constitute a concrete injury in its previous cases." *Id.*

Next, in *Perez v. Golden Trust Insurance, Inc.*, 470 F. Supp. 3d 1327, 1327–28. (S.D. Fla. 2020), the plaintiff received two text messages over the course of four days. The court found that *Salcedo*'s "rationale for finding a lack of a concrete injury from one text message applie[d] equally" where plaintiff "wast[ed] 60 seconds of his time reviewing the messages, causing aggravation and intrusion, wast[ed] 7 minutes researching Defendant and the source of the messages on the internet, and wast[ed] 5 minutes locating and retaining counsel for this case in order to stop Defendant's

unwanted calls." *Id.* at 1328.

In *Fenwick v. Orthopedic Specialty Institute, PLLC*, No. 0:19-CV-62290-RUIZ/STRAUSS, 2020 U.S. Dist. LEXIS 21566 at *2, *3, *12 (S.D. Fla. Feb. 4, 2020), the magistrate judge recommended that the court find the plaintiff lacked standing where she received two back-to-back telemarketing messages wherein she wasted 22 minutes of her time, used memory space on her cellular phone, and depleted her cellular telephone battery. *Case voluntarily dismissed subsequent to issuance of R&R*, 2020 U.S. Dist. LEXIS 32938 (S.D. Fla. Feb. 25, 2020). The magistrate judge found that plaintiff failed to establish "how receiving two identical, and simultaneously received, brief text messages is qualitatively different than the harm from the single, multi-part text message the Eleventh Circuit addressed in *Salcedo*." *Id.* at *11.

Finally, in *Mittenhal v. Florida Panthers Hockey Club, Ltd.*, 472 F. Supp. 3d 1211, 1216–17, 1224–25 (S.D. Fla. 2020), the court found no injury in fact where the plaintiffs made no allegation of wasted time and no other tangible or intangible harm of any kind, despite receiving between 10 and 30 unwanted telemarketing text messages over a period of four months.

Defendant marshals these cases to assert that the harm alleged here is even less than that found to be insufficient in *Eldridge* and *Perez*. (Doc. 18 at 12.) The undersigned agrees. Here, Plaintiff received three identical text messages of approximately 25 words in length over a five-month period. (Doc. 1 ¶ 18.) As a result of receiving those texts, Plaintiff alleges he suffered a cumulative waste of time of 2 minutes (*id.* ¶ 34), or an average of approximately 40 seconds of wasted time from receiving the three text

messages over the course of several months. This includes time he was forced to waste by replying "STOP again" on two different occasions, in an unsuccessful attempt to opt-out of receiving the text messages. This is qualitatively insufficient to establish a concrete harm. Moreover, Plaintiff's bare allegations of the additional harm of invasion of privacy, aggravation, and intrusion upon seclusion, without more, do not alter this analysis. After a close review of *Salcedo* and cases interpreting its effect, the undersigned concludes that the alleged harm here is "isolated, momentary, and ephemeral," and thus, not enough to establish Article III standing. *Salcedo*, 936 F.3d at 1171.

Plaintiff urges the Court to distinguish between the facts in *Salcedo* and those here. (Doc. 34 at 2–3.) Plaintiff notes that he received not one, but three text messages, despite registering his number on the Do-Not-Call Registry and requesting that Defendant stop texting him, plus a total of two minutes of wasted time—further distinguishing this case from *Salcedo*. (*Id.* at 3, 7–8.) Plaintiff also cites to two cases that distinguished *Salcedo*, as Plaintiff seeks to do here. (*Id.* at 3.)

First, in *Underwood v. IFA Holdings, LLC*, No. 1:21-cv-00830-ACA, 2022 U.S. Dist. LEXIS 112938, at *4 (N.D. Ala. June 27, 2022), the court considered a plaintiff who had registered his number on the Do Not Call Registry and received two unsolicited text messages over the course of two days. In declining to extend *Salcedo*, the court found:

> [Plaintiff] has alleged a tangible injury: he alleges that, over the course of two days, he received two text messages on the cell phone that he uses as his main residential line and

- 10 -

> that he spent time "answering the text messages and tracing their origin." This is sufficiently specific to distinguish from [plaintiff's] claim from the claim at issue in *Salcedo*, where the plaintiff's allegation was "time wasted only generally."

*Id.* at *7–8 (internal citation omitted).[3]

Similarly, in *Persichetti v. T-Mobile United States*, 479 F. Supp. 3d 1333, 1337 (N.D. Ga. 2020), the court found plaintiff had sufficiently alleged a concrete harm where Plaintiff "detailed the actions he took in responding to the text messages and his attempts to stop future text messages. For instance, he changed the settings on his phone in an attempt to stop the messages. He also called customer service and e-mailed Defendant's CEO in response to the messages."

The undersigned is not persuaded by *Underwood* or *Persichetti*. In *Underwood*, the court appears to have accorded significance to the fact that the plaintiff identified a specific amount of wasted time, rather than a more general claim of wasted time like in *Salcedo*. But the court did not engage in the *qualitative* analysis of harm that *Salcedo* directs. Moreover, the plaintiff in *Underwood* alleged the additional harm of taking time to trace the unwanted text messages' origin, unlike here. Likewise in *Persichetti*, the plaintiff spent time calling and emailing Defendant in response to the unwanted text

---

[3] The undersigned notes that Plaintiff asserts that a quantifiable amount of lost time is a tangible injury because the time can literally be counted. (Doc. 34 at 8 n.2.) The undersigned recognizes that *Salcedo* involved an unspecified amount of wasted time, which may be why the opinion reads as if it analyzed an intangible injury. However, subsequent to *Salcedo*, the Eleventh Circuit described lost time as a "nebulous," albeit tangible, injury. *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1338 (11th Cir. 2021). Regardless of whether the harm of wasted time is qualified as tangible or intangible, what is more important is the qualitative analysis of whether the lost time amounts to a concrete injury in fact to establish Article III standing.

messages. While the undersigned provides no opinion as to whether those actions should satisfy the *Salcedo* standard, present here is solely an allegation of two minutes of wasted time for receiving the text messages, *including* responding twice via text in an attempt to opt out.

Plaintiff next argues that the Supreme Court case of *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), strongly undermines *Salcedo*. (Doc. 34 at 3–6.) *TransUnion* was a Fair Credit Reporting Act class action in which the Court concluded that plaintiffs who had experienced reputational harm due to credit files being provided to third-party businesses demonstrated concrete harm and thus, had Article III standing. 141 S. Ct. at 2200. Plaintiffs whose credit files were not provided to third-party businesses did not demonstrate a concrete harm. *Id.* Plaintiff urges the Court to recognize that the *TransUnion* Court, in coming to its holding, looked at the kind of harm, rather than the degree of harm that *Salcedo* focused on. (Doc. 34 at 4–5.)

At least one judge in the Middle District of Florida has examined standing issues subsequent to *TransUnion*, under the Florida Telephone Solicitation Act, a TCPA analogue, and found *TransUnion* to be inapposite. In *Fontanez v. Wolverine World Wide, Inc.*, No. 8:22-CV-2538-KKM-TGW, 2022 WL 17959844, at *3 (M.D. Fla. Dec. 27, 2022), the court rejected the defendant's argument, in seeking to avoid remand, that plaintiff had standing to sue for receiving at least one text message and with no allegation of harm. *Id.* at *1–2. Finding *TransUnion* "not on point," the court stated:

> [T]he Supreme Court addressed the proper methodology for evaluating whether intangible harms satisfy the concreteness of Article III. And post-*TransUnion*, the en banc Eleventh Circuit has acknowledged that "[t]he Supreme Court has since ratified our approach." *Hunstein*, 48 F.4th at 1239. If anything, *TransUnion* fortified the Eleventh Circuit's analysis of standing for intangible harms.

*Id.* at *7. The court also noted that *TransUnion* did not involve text messages like in *Salcedo*, so the two cases were factually distinct. *Id.* Finally, the court stated that "*TransUnion*'s lone 'see also' citation to a Seventh Circuit case that concluded differently than *Salcedo* about standing in the context of text messages does not equate with overruling or abrogating *Salcedo*." *Id.* at *7–8. Thus, in light of the applicable analysis in *Fontanez,* the undersigned finds Plaintiff's argument about the effect of *TransUnion* on *Salcedo* unavailing.

Plaintiff then argues that no court outside the Eleventh Circuit has followed *Salcedo*, citing to several circuit and district court cases outside the Eleventh Circuit. (Doc. 34 at 6–7.) But this argument misses the point because, as Plaintiff well knows, the Middle District of Florida sits within the footprint of the Eleventh Circuit, and *Salcedo*, as a published opinion, is binding on this Court to the extent it applies. Therefore, the undersigned does not examine this argument further.

Finally, Plaintiff argues that, because he has alleged claims arising under 47 U.S.C. § 227(c), which deals with text messages sent to his number on the Do-No-Call Registry, he has experienced a greater harm than in *Salcedo* due to a more invasive violation of his privacy rights. (Doc. 34 at 7.) Plaintiff asserts that because he took steps

to avoid telemarketing calls by placing his number on the Registry and took steps to stop Defendant's messages, that is a categorically different harm than the one identified in *Salcedo*. (Doc. 34 at 7.) Plaintiff is correct that the TCPA violations in *Salcedo* arose under § 227(b). 936 F.3d at 1165. However, *Underwood*, on which the Plaintiff relies in support, involved claims under both § 227(b) and (c), and the court did not appear to rely on the invasion of privacy under § 227(c) to determine that the plaintiff had standing. 2022 U.S. Dist. LEXIS 112938, at *8. Rather, the court looked at the *qualitative* amount and nature of harm that resulted from the wasted time, not the purportedly additional harm of a privacy violation. The undersigned also finds Plaintiff's citation to *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 653 (4th Cir. 2019) to be unpersuasive here, as that case involved multiple telephone calls, not text messages, to plaintiffs who had placed their numbers on the Do-Not-Call registry.

Ultimately, in light of *Salcedo* and its progeny, the undersigned respectfully recommends that the Court finds that Plaintiff has not suffered a concrete harm on the facts, as alleged, and thus, does not have standing to maintain this lawsuit. Because it is the undersigned's recommendation that Plaintiff lacks standing to maintain this lawsuit, the undersigned does not reach Defendant's remaining arguments to dismiss the Complaint on the basis of judicial estoppel and for failure to state a claim. (*See* Doc. 18.) However, should the Court require analysis of these issues, the undersigned respectfully requests that the matter be re-referred for the issuance of an additional Report & Recommendation.

## IV.    RECOMMENDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court **GRANT** Defendant Visionworks of America, Inc.'s Renewed Motion to Dismiss (Doc. 18) and **DISMISS WITHOUT PREJUDICE** Plaintiff's Complaint (Doc. 1) for lack of subject matter jurisdiction.

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on March 6, 2023.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE